531 So.2d 711 (1988)
Don WHITE, Petitioner,
v.
STATE of Florida, Respondent.
No. 69948.
Supreme Court of Florida.
September 29, 1988.
*712 Don White, Belle Glade, in pro per.
Robert A. Butterworth, Atty. Gen., and Calvin L. Fox and Fariba N. Komeily, Asst. Attys. Gen., Miami, for respondent.
OVERTON, Justice.
This is a petition to review the per curiam affirmed opinion of White v. State, 499 So.2d 14 (Fla. 3d DCA 1986). In its decision, the Third District Court expressly relied on the decision of the Second District Court of Appeal in Rowe v. State, 496 So.2d 857 (Fla. 2d DCA 1986). This Court has accepted jurisdiction in Rowe v. State. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The issue before us concerns the authority of the trial judge to depart from the guidelines sentence when the departure is part of the terms of a plea agreement. Under the circumstances of this case, we approve the district court's decision allowing the departure and distinguish our decision in Williams v. State, 500 So.2d 501 (Fla. 1986).
The relevant facts reflect that the petitioner, Don White, was indicted for first-degree murder. He subsequently agreed to enter a plea of guilty to second-degree murder and, as part of the plea agreement, agreed to waive the imposition of the sentencing guidelines and allow the court discretion to impose any sentence it felt appropriate, ranging from a possible minimum sentence of three years to a possible life sentence. The following represents the relevant portions of the plea colloquy:
THE COURT: My first question to you, Mr. White is, do you understand the proposed change of plea?
THE DEFENDANT: Yes.
THE COURT: Have you talked with Miss Wood and gone over the details of the change of plea and possible ramifications it might have for you?
THE DEFENDANT: There's nothing to discuss. It goes from three to life.

THE COURT: There are some things to discuss.
THE DEFENDANT: It's your discretion.

THE COURT: Okay. What I want to make sure of, all throughout this, is that you understand what is going on and that I want to make sure that first of all that you understand what I just told you the negotiated plea is. Do you feel like you understand what the proposed change of plea is?
THE DEFENDANT: I understand.
... .
THE COURT: Well, the statute specifically refers to second degree murder as the unlawful killing of a human being when perpetrated by any act, imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any individual. This is sort of a statutory definition. So initially do you understand the change of plea?
THE DEFENDANT: Yes.
THE COURT: As to what is involved. Are you in agreement with the proposed change of plea?
... .
THE COURT: There is always, any time anybody is charged with a crime, there is always the natural human inclination, because it is a bad human experience to want to get it over with. I used to do a little defense work and you go talk to a client in jail and "I just want to get this over with" that's a concern that a person had when they are going through this, but it tends to be a kind of short range concern because whatever happens in this case, the person who is accused, is going to have to live with that. So I guess what I am trying to tell you, although it is not my place to give you advice, you probably need to make sure that you are not entering this plea just to get it over with, you see. And I am not going to take a plea from you where you are just saying "I just want to *713 get it over with." What I am concerned with is if you have examined the case thoroughly and feel that overall it is in your best interest to do this change of plea, I will consider it, but matters of expedience or just "What the heck, let's go ahead and get this over with", the matter is too serious both for you and from the state's concern, from my standpoint and protecting the public interest and your rights to try to do that.
THE DEFENDANT: I tried that before with you. I told you I would rather go get the chair and get it over with and you said no.
THE COURT: I don't know if you had second thoughts about that, but I hope so.
THE DEFENDANT: If it is life or the chair, I would still rather have the chair.
THE COURT: If you want 
THE DEFENDANT: Since I have a position now with second degree, to go from three to life, I feel that by my whole record of 33 years, that I hopefully will get a fair shake at sentencing. That's why I was going to the plea of second degree without the guidelines. I am tired of the guidelines. I dragged my family through so much. I am surprised my mother hasn't had another heart attack. I am going to take whatever I can get and get it over with, sir.
... .
THE DEFENDANT: No offense. I understand that what I might end up getting by going by second without trial, losing my right to appeal, except in thirty days take all this stuff. But I also understand there is not really much of a case except for the doctor which can be reading  which you can read yourself for sentencing. There is nothing else involved except pictures that you can do yourself in closed chambers. So I don't think it's necessary to go any further with the trial. Second degree is the best I am ever going to be able to ask for consideration of the Court. So I think we can stop now and just let you handle it.
(Emphasis added.)
The trial court accepted the plea and sentenced White to thirty-years' imprisonment. White now claims he should have been sentenced under the guidelines for a period of twelve to seventeen years. In his motion for postconviction relief, White asserts that had he known the sentence was being imposed under the old sentencing structure rather than the current sentencing guidelines, he would not have entered into the plea agreement and would instead have chosen to go to trial.
The Second District Court, addressing a similar contention in Rowe v. State, 496 So.2d 857 (Fla. 2d DCA 1986), rejected the argument that a negotiated plea resulted in an impermissible departure from the sentencing guidelines and imposition of an excessive sentence. The court found that the bargained-for sentence resulted from Rowe's own initiative in entering into a plea agreement to avoid sentencing under the habitual offender statute. In concluding that the sentence was permissible, the Second District Court specifically noted that the sentence did not stem from any action by the trial court independent of the plea bargain, stating:
Moreover, there is a perceptible difference between a circumstance where the decision to depart originates with the trial court, and where, as here, the departure flows from the defendant's acceptance of the consensually arrived at sentence. Just as there exists the theoretical possibility that Rowe could have been penalized only to the extent of a five-year sentence, there is an equally significant likelihood that he could have received a forty year term. He gambled the certainty of the former against the chance of the latter; he has not demonstrated that he lost that gamble.
Id. at 859. The Third District Court, in per curiam affirming the lower court decision in the instant case, clearly relied on this reasoning in Rowe to affirm White's thirty-year sentence.
We disagree with White's argument that our decision in Williams v. State, 500 So.2d 501 (Fla. 1986), controls and requires a resentencing in accordance with the guidelines. *714 Williams is clearly distinguishable from this case. The plea entered by Williams was conditioned upon the following three matters: "1) that his criminal record was what he said it was; 2) that he reappear for sentencing on July 20, 1984; and 3) that he refrain from engaging in any further criminal activity." Id. at 501-02. At the time of the plea, Williams agreed to these conditions. Williams failed to reappear for sentencing and was arrested in Texas four months later. The trial judge based his departure on Williams' failure to appear for sentencing and imposed a fifteen-year sentence. We found that sentence improper, determining it was "impermissible to deviate from the guidelines based upon a crime for which the defendant had not been convicted." Id. at 502. We noted that Williams' failure to appear would have been punishable by a maximum of five-years' imprisonment as a third-degree felony. Further, had Williams been convicted of that offense, it would have been considered in computing the guidelines score. Under the facts of Williams, we found a departure sentence cannot be justified by conduct constituting an offense for which a defendant has not been convicted. That is not the situation in this case.
White, in entering a plea to second-degree murder, was pleading to a reduced offense. He clearly understood that, as part of the plea agreement, the trial judge could impose a sentence of from three years to life imprisonment and that the plea was being entered on condition that the guidelines not apply. The record clearly establishes that White knowingly entered a plea to a reduced charge of second-degree murder with possible imposition of a life sentence in order to avoid a possible conviction of first-degree murder and the imposition of a death sentence or a life sentence without the possibility of parole for twenty-five years. Nothing in the record indicates that this plea was involuntary. To the contrary, the record clearly shows that White knew exactly the terms of this plea bargain at the time he entered into it.
Accordingly, we find the sentence was validly imposed and approve the decision of the district court.
It is so ordered.
EHRLICH, C.J., and McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.